(No. 2155—

HENKEL CONSTRUCTION COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 12, 1939.*

WILLIAM M. SCANLAN, for claimant, OSCAR E. CARLSTROM, of counsel.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Henkel Construction Company, claimant herein, is a co-partnership, engaged in the business of building and constructing highway improvements in Illinois and other states. It submitted a bid to the State of Illinois, Department of Public Works and Buildings, Division of Highways, at a let-

ting held on August 4, 1926, and thereafter claimant was awarded a contract for the building and construction of Sections 19 and 20 of S. B. I. Route No. 18. On August 18, 1926 the following letter was mailed to claimant by Frank T. Sheets, Chief Highway Engineer:

"Gentlemen:

"On August 7, you were awarded the contracts for the above mentioned sections subject to the following special provision in each of these contracts:

" 'Right of Way. The right of way for the road to be built under the terms of this contract has not as yet been secured, but will be secured on behalf of the Department of Public Works and Buildings. No work shall be done on this section until formal written notice to proceed has been given by the Department to the contractor, but the work shall be completed within six months after said formal notification has been given. No extra compensation nor claim for damages will be allowed the contractor on account of delay in securing the right-of-way and starting work.' "

"The right of way for the following portions of these sections has now been secured:

"Section 19 from Station 109/00 to Station 213/00.

"Section 20 from Station 14/36 to Station 276/00.

"Work may, therefore, be started immediately on the portions for which the right of way has been secured. No work should be undertaken on the remainder of the sections until you have been further advised by this Department."

Separate contracts for the construction of the several sections were entered into, and one section known as 20-X provided for under Contract No. 2793, was carried on to completion, and was not involved in any delay in connection with the construction of Sections 19 and 20.

Claimant was authorized by letter, dated August 18, 1926, signed by C. M. Hathaway, Engineer of Construction, to place orders for cement for use in building Sections 19 and 20. Claimant also received a letter, dated August 19, 1926, signed by M. J. Fleming, District Engineer, urging claimant to commence work on Sections 19 and 20 as soon as possible, such letter stating,

"five miles of right of way had been cleared up on Section 20 extending from Mendota to Meriden and two miles had been cleared up on Section 19 extending through Earlville and to the west.

"* * * * will be glad to receive your letter as soon as possible, advising when the culvert and grading outfits can start."

C. M. Hathaway, Engineer of Construction, also wrote claimant on August 24, 1926 stating to claimant that construction of these sections (19 and 20) this season is extremely important and every effort should be made on your part

to start work immediately. Claimant notified Hathaway by telegram and letter that they expected to start work the next Friday or Saturday, i. e. September 3rd or 4th, 1926. In that letter claimant stated, "our plans are to move our outfit on the job this fall and winter and be all set for an early start on the paving next spring." During September, 1926 claimant started work building culverts, excavating and grading and continued until stopped by bad weather. This work was resumed in the spring of 1927, and on May 27th C. M. Hathaway authorized claimant to place further orders for cement. In the early part of June, 1927 claimant moved in its paving outfit to the location near Meriden and commenced laying cement on the sections of S. B. I. No. 18 covered by its contracts. It continued its work until June 25, 1927 when a telegram was received by Carl Henkel as follows:

"Supreme Court of Illinois in *Hill, et al.* vs. *County of LaSalle, et al.*, holds that bill for injunction in reference to location or Route Eighteen, Section Nineteen and that portion of Section Twenty from Meridian east should be heard on its merits. Therefore we direct you to stop work today until location has been approved by the courts."

This injunction suit was predicated on averments that the right of way indicated by the Division of Highways for a distance of approximately eighteen miles between the Villages of Somonauk and Meriden, was through territory over which no highway had ever been previously established and did not conform to the route set forth in the bond issue statute under which the road was being constructed.

Upon receipt of this telegram claimant discontinued its work on Section 19 and that part of Section 20 east of Meriden which were involved in and affected by the above decision of the Supreme Court, but proceeded to carry on the construction of pavement on that part of Section 20 lying west of Meriden.

The paragraph concerning right of way, contained in the letter from Mr. Sheets to claimant under date of August 18, 1926, was also included as a special provision in each of the contracts which claimant signed.

After claimant completed its work west of Meriden and having been notified not to proceed further with work lying east of Meriden pending the determination of the controversy under the Hill case, claimant early in the year 1928 abandoned its camp and moved its supplies to another section of the State where it had other work.

As a result of the above suit and the adjustment made thereunder, the route of S. B. I. No. 18 was relocated, so as to be entirely clear of Section 19 and a part of Section 20. These portions of Sections 19 and 20 as specified in the contract were abandoned and such portions of Sections 19 and 20 as relocated were thereafter constructed under the provisions of Supplementary Agreement, signed by claimant on October 24, 1928. These Supplemental Agreements contained recitals referring to the prior execution of the original contracts on August 7, 1926; that a decision of the Supreme Court had been entered on June 23, 1928, making it necessary to modify the location of certain portions of Route No. 18, and that,

"For and in consideration of the payments and agreements herein contained, party of the second part (claimant herein) agrees with said party of the first part at his own proper cost and expense to perform all the work, furnish all the materials and all labor necessary for the construction of a Portland cement concrete pavement on a location which will be a modification of the location as described in the above mentioned contract for said Section 19 * * *, as provided in the revised plans for Section 19, approved by said party of the first part, August 11, 1928, and which are made a part hereof. The following work shall be performed in accordance with said plans prepared by the Department of Public Works and Buildings, Division of Highways, and said work shall be considered a full performance of the original contract instead of the completion of the unfinished work contemplated in the original contract, and will be paid for at the following unit prices, as provided in the original contract * * *. It is further agreed that all conditions, terms and other provisions of the original contract shall govern, except as specified herein."

Claimant constructed the paving on Sections 19 and 20 as relocated, and completed its work during the last week of July, 1929. The damages which it seeks are the result of a change in proposed right of way and delay incident to acquiring parts of such right of way, and the relocation of the sections of roadway in question, which prevented claimant proceeding normally with its work. Said changes necessitated its moving and rehandling its machinery and supplies with additional expense for Superintendent, Time-keepers and Foremen, all in an amount of Twelve Thousand Four Hundred Thirty-one and 10/100 ($12,431.10) Dollars, for which it filed its claim in the Court of Claims on April 19, 1933.

A number of conferences were held between Carl Henkel, officials of the Highway Department, and of the Attorney General's Office, as a result of which a revised statement of

claim in the sum of Nine Thousand Five Hundred Fifty-one and 16/100 ($9,551.16) Dollars was filed, and no contention exists as to the computation of damages.

The only question to be determined is the liability on the part of the State of Illinois to pay claimant the said sum of Nine Thousand Five Hundred Fifty-one and 16/100 ($9,551.16) Dollars.

The Attorney General contends that the claim is barred by the special provision contained in both the original and supplemental contracts, absolving respondent from damages on account of delay in securing the right of way or in starting work. Also, that the claim is barred by the statute of limitations as not having been filed within five years after claimant's right of action accrued. Further, that the claims are also barred by the language of Section 41, General Specifications, which were made a part of the contracts in question, said clause being,

"The acceptance by the contractor of the last payment as aforesaid shall operate as and shall be a release to the department from all claims or liability under this contract for anything done or furnished, or relating to the work under this contract, or for any act or neglect of said department relating to or connected with this contract,"

it appearing from the record that the Engineers' final payment estimates for said Sections 19 and 20 were scheduled for payment on December 20, 1929, and that State warrants No. 203020 and No. 203021 were sent to claimant on December 31, 1929 and were returned to the auditor January 7, 1930 after having been cashed by claimant.

Counsel for Claimant contends that the right of way clause, "No extra compensation nor claims for damages will be allowed the contractor on account of delay in securing the right of way and starting work," should not bar this claim, because, as he claims, the delay which arose here was not in securing the right of way but was due to the court order in the case of *Hill* vs. *LaSalle Co.*, 326 Ill. 508, and the subsequent action of the Highway Department in changing or relocating a section of the proposed road; further, that such delay was not in "starting work," but was the result of discontinuance of work after having been started, such discontinuance being due to the instructions of respondent.

The court is mindful of the apparent earnest effort that has been made by claimant in conference and otherwise, to

reduce its claim to an amount which respondent's agents agreed it was in fact damaged. If the contract under which it performed the work in question would, by its terms, permit a recovery, we would without hesitation grant an award for the amount of additional expense to which claimant is shown by the record to have been put because of the delayed construction. We have endeavored to adhere to the rule that in recognizing the demands of equity and good conscience, awards must be restricted to those claims wherein the State would be liable if suable in a court at law. While claimant did in fact discontinue its construction work on June 25, 1927, in response to the telegram of that date from the Director of the Highway Department, such stopping of work and the telegram and decision of court which prompted the sending of the message, were all delays resulting from the failure to secure the right of way for the proposed S. B. I. Route No. 18.

Claimant cites the case of *Carson-Payson Co.* vs. *State,* 8 C. C. R. 581 and *Willadsen* vs. *State,* 8 C. C. R. 604, in support of its contention that ''Where claimant sustains a loss under his contract with the State through no fault of his own but occasioned solely by the State, through a change of plans, an award will be made.'' The distinction between the cases cited and the case at bar is that the defenses herein urged do not appear in either of said cases, and so far as the record discloses, the contracts in neither of those cases contained any provision similar to the non-payment clause in the right of way specification contained in the present contract.

Claimant was aware of the possibilities of delay on this job, because the clause for non-payment of any claims for damages due to delay in securing the right of way that was contained in the original specifications, was quoted in the departmental letter to claimant of August 18, 1926, wherein claimant was told of having been awarded the contracts in question, and was referred to in claimant's letter of September 1, 1926 to C. M. Hathaway. In this letter claimant stated, ''On the day we signed the contracts we informed Mr. Sheets that we were unwilling to start any work until all right of way was cleared,'' etc. Such comment or statements could not change the effect of the contract itself. Such proviso is incorporated in the supplementary agreements of October 24, 1928 by virtue of the clause therein which reads, ''It is further agreed that all the conditions, terms and other provisions

544

of the original contract shall govern except as specified herein.'' We are unable to reach any other conclusion than that the entire difficulty in the construction of the highway in question arose out of obtaining the proposed right of way. The injunction suit was the result thereof, and the instructions of the Highway Department to discontinue the work followed the latter. Observance of the contract undoubtedly works a hardship upon claimant, but the latter made its contract and knowingly accepted its terms. What is true in regard to the provision just discussed is also true with regard to the further provision contained in Section 41 of the Standard Specifications for road and bridge construction, which formed a part of claimant's contract, as hereinabove quoted. In view of the foregoing views, we will not extend the record by discussing the question when the claimant's right of action might have accrued. With due reluctance an award is denied and the claim dismissed.