RUSSELL G. SCHLENZ *et al.*, Plaintiffs-Appellants, v. JOHN W. CASTLE, Director of the Department of Local Government Affairs, *et al.*, Defendants-Appellees.

Second District No. 2—84—0301

Opinion filed March 26, 1985.—Supplemental opinion filed on denial of rehearing May 24, 1985.

Paul E. Hamer, of Northbrook, for appellants.

Neil F. Hartigan, Attorney General, of Springfield, and Fred Foreman, State's Attorney, and Conzelman, Schultz, Snarski & Mullen, both of Waukegan (William R. Wallin, Assistant Attorney General of Chicago, and Gail Tuler Friedman, Assistant State's Attorney, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

This case returns to this court after previously having been affirmed in part and reversed in part and remanded by this court, and after this court's decision was affirmed in part, reversed in part and remanded by the supreme court. *Schlenz v. Castle* (1980), 80 Ill. App. 3d 1131, *aff'd in part, rev'd in part & remanded* (1981), 84 Ill. 2d. 196.

The early procedural history of this case is aptly summarized in the supreme court's opinion, and is presented here as background for an understanding of the procedural posture of the instant appeal:

"Cause No. 53189 is another in a series of actions involving the alleged failure of the appropriate officials to equalize real property assessments in this State. See, *e.g., Hamer v. Kirk* (1978), 57 Ill. App. 3d 335; *Hamer v. Kirk* (1976), 65 Ill. 2d 211; *Hamer v. Kirk* (1976), 64 Ill. 2d 434; *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400; *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51; *Hamer v. Mahin* (1970), 47 Ill. 2d 252; *People*

*ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360.

In their two-count first amended complaint filed in the circuit court of Lake County, plaintiffs Russell G. Schlenz and Nancy A. Schlenz named as defendants the Director of the Department of Local Government Affairs, the supervisor of assessments of Lake County, the Lake County board of review and certain Lake County township assessors. In count I plaintiffs, purporting to act as representatives of a class, sought, *inter alia*, an order declaring that a specified procedure utilizing 'sales ratio studies' for assessment and equalization of realty be made applicable statewide for 1977 and subsequent tax years. Plaintiffs also sought an order declaring that the defendants must comply with applicable provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 482 *et seq.*) for 1977 and subsequent tax years. In count II plaintiffs sought injunctive relief to enforce the declarations prayed in count I of the complaint.

A 'Supplemental Complaint' was filed 'attacking the method of distributing state grants-in-aid' (see *Hamer v. Dixon* (1978), 61 Ill. App. 3d 30), and the first amended complaint was further amended seeking to challenge the tax-exempt status of certain property in Lake County.

Citing *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, plaintiffs filed a motion for partial summary judgment alleging that 'there is no genuine issue as to any material fact relative to the failure of the defendants *** to publish the real estate assessment lists for the 1977 tax year in Lake County until after December 15, 1977, except in Shields Township.' Plaintiffs also moved for a determination of their class as consisting of 'all persons or entities owning improved real property used for single family residential purposes subject to taxation in the State of Illinois for the 1977 tax year and subsequent tax years.' Defendants filed a motion to deny, and an 'objection to the motion' for determination of the class. The circuit court denied plaintiffs' motion for partial summary judgment and allowed defendants' motion and objection opposing the class certification. Pursuant to Supreme Court Rule 308(a) (73 Ill. 2d R. 308(a)) the circuit court certified the issues of the propriety of a class action and the constitutionality of the statute.

The appellate court affirmed that portion of the order which denied class certification, held that section 318.1 was unconstitutional as an attempt to validate a void tax and as viola-

tive of the principle of the separation of powers (see Ill. Const. 1970, art. II, sec. 1), and remanded the cause for a determination of the existence of a subclass. 80 Ill. App. 3d 1131, 1133-35; see Ill. Rev. Stat. 1979, ch. 110, par. 57.3(b)." *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 200-01.

The supreme court found no abuse of the circuit court's discretion in determining the plaintiffs were inadequate class representatives, and in refusing to certify the class. The court also approved this court's remand of the cause for a determination of whether a subclass may be found to exist. The court reversed this court's judgment, however, insofar as it held invalid (on the ground of unconstitutionality of section 318.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 799.1)) real estate assessments because of the defendants' failure to give timely notice as required by section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 584).

On remand, the starting point of the factual background of the instant appeal, plaintiffs petitioned for a change of venue on the grounds of prejudice. The court denied that motion, as well as plaintiffs' motion to certify the question under the provisions of Supreme Court Rule 308 (87 Ill. 2d R. 308).

Certain defendants—Robert Jasper, the supervisor of assessments for Lake County (supervisor) and the Lake County board of review (the board)—moved to dismiss the action because more than eight months had passed since the supreme court's mandate was filed in the circuit court, and no subclass had been proposed or certified. The defendants' motion to dismiss was denied, and plaintiffs were allowed 14 days to propose subclasses. Plaintiffs filed their motion for subclass determination proposing 13 subclasses.

According to the record, a hearing on the merits of this motion was held approximately six months later on March 17, 1983, and the plaintiffs' motion was taken under advisement. No decision on that motion appears in the record, nor does the record indicate plaintiffs requested a ruling thereon.

On April 5, however, the supervisor and the board moved to dismiss the individual claims of Russell and Nancy Schlenz for failure to exhaust their administrative remedies. The motion recited that it was brought "pursuant to section 2—615 and 2—619" of the Civil Practice Law. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619.) Included in the record as an exhibit attached to the motion was a portion of Nancy Schlenz' deposition in which she states neither she nor her husband filed an assessment complaint with the Lake County board of review for the 1977 tax year. Also attached to the defendants' motion

were affidavits of the docket clerk of the Lake County board of review averring that no assessment complaints had been made to the board of review concerning the Schlenz property for the tax years 1978 through 1982. The motion also included a renewed request that the court deny the certification of the proposed subclasses.

Several days later, the plaintiffs moved pursuant to section 2—407 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—407) and "in response to the motion to dismiss" to substitute "the Lake County Taxpayers' Association, Frank Rice, Stephen Rudisill and Donald C. Johnson as Plaintiffs and class representatives ***." The court granted leave to file the motion and continued generally the defendants' motion to dismiss and the plaintiffs' motion to substitute.

Seven months later, the board and supervisor's notices of deposition for the three individuals proposed to be substituted were filed, and the defendants later filed a motion to compel the parties to appear for deposition, and the cause was continued to December 22, 1983, for hearing on any motions as to Rice and Rudisill, "proposed new party plaintiffs." The deposition of Mr. Rice was taken on December 8, and Mr. Rudisill's on December 20. The depositions were filed with the clerk of the court on December 22, and were bound in the common law record.

The court's order, dated December 22, 1983, dismissed the Schlenzes as individual plaintiffs, granted the motion to substitute, denied the motion to substitute Rice and Rudisill, and continued the cause generally as to Johnson. Plaintiffs moved for rehearing and vacation or modification of the court's order pursuant to section 2—1203 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203) or, in the alternative, that the court certify the cause under Supreme Court Rule 308 pursuant to their motion for certification incorporated therein. Plaintiffs requested a ruling on the motion to rehear, but the cause was continued for plaintiffs' submission of additional material in support of their motion to rehear, and for defendants' response thereto.

On March 6, the motion to rehear was denied. The order also dismissed Johnson "as a subclass representative based on plaintiffs' attorney's stipulation that Johnson has failed to exhaust his administrative remedies." The order also contained a Rule 304(a) finding (87 Ill. 2d R. 304(a)), and plaintiffs' notice of appeal from the court's December 22 and March 6 orders was timely filed. In view of the court's Rule 304(a) finding, and the fact that the dismissals of the Schlenzes, Rice, Rudisill, and Johnson terminated their right to proceed as class representatives and as individuals, this court has jurisdiction to con-

sider the issues raised.

The issues are (1) whether the lack of a finding as to the existence of a subclass was error; (2) whether the Schlenzes and proposed substitute plaintiff Donald C. Johnson were properly dismissed as individuals for failure to exhaust their administrative remedies; (3) whether the court erred in determining that Rice, Rudisill and Johnson were not adequate class representatives; (4) whether the court erred in dismissing the proposed substitute plaintiffs as individual plaintiffs; (5) whether notice must be given to members of the class where the class representative is not permitted to continue; (6) whether the court must supply a remedy where no statutory remedy is provided; (7) whether the court had jurisdiction to hear the matter on December 22; and (8) whether change of venue was improperly denied.

### (1) SUBCLASS DETERMINATION.

 In the first appeal of this cause, this court agreed with the circuit court that three of the four requirements for maintaining an action as a class suit under section 2—801 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—801) were not met (the "numerosity" requirement *was* met), specifically: (1) no common question of law or fact predominated over any question affecting only individual members; (2) the named plaintiffs (the Schlenzes) knew essentially nothing about the suit and the complete control of the cause which they had vested in their attorney (the same one then as now, Paul Hamer) made him the *de facto* representative of the class, and caused a *per se* conflict of interest under *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226; and (3) the class action would not be an appropriate method for the fair and efficient adjudication of the controversy due to the multiplicity of disparate and unrelated factual and legal questions involved. *Schlenz v. Castle* (1980), 80 Ill. App. 3d 1131, 1133.

In deciding a second issue raised there, this court found it was not error for the trial court to have refused to allow a substitution of class representatives or a substitution of attorneys for the class. Our opinion then provided:

> "Based on our holding above, that the trial court correctly ruled that the proposed class should not be certified, that a class action could not be maintained as alleged, and based on the reasoning of *Goldchip* [*In re Goldchip Funding Co.* (M.D. Pa. 1974), 61 F.R.D. 529] and *Barliant* [*Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226], we determine that if, on remand, the trial court should find that there is a subclass to certify, there should be either a substitution of attorneys or of class

representatives. *Barliant.*" 80 Ill. App. 3d 1131, 1134.

In *Barliant,* the propriety of a class action was at issue, and the court's opinion noted it was clear it was not being asked to determine whether a cause of action existed or not. (*Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 233-34.) It found the numerosity requirement was not in dispute there, and found that a common question predominated. However, the court noted that during the pendency of the litigation the named plaintiff had become a partner with the law firm that had been representing the plaintiff, and the class, from the start. The court determined that this created a *per se* conflict of interest which required disqualification of the firm as counsel. The court stated:

"Applying the rule to this case, we find the firm of Yaffe, Mark & Barliant must be disqualified. We must then remand to the circuit court with directions to require the substitution of independent counsel before the action may proceed further. Parenthetically, we do not believe it is sufficient to replace the named representative plaintiff with another class member, while retaining the same counsel, because this would permit an attorney to bring a suit to benefit his or her firm and later replace the representative party while protecting the firm's financial interest." 74 Ill. 2d 226, 238.

Plaintiffs here now aver, with no citation of authority, that the court erred in not determining the existence of subclasses as required by this court's prior decision.

An action may be dismissed before consideration is given to whether to certify a class. (*Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44.) In *Landesman,* the seminal case, the supreme court approved the view that where the plaintiff has no individual cause of action, it necessarily follows that any attempted class action also must fail. In *Schlessinger v. Olsen* (1981), 86 Ill. 2d 314, the supreme court found it was clear from the *Landesman* decision that where the question of the certification of the class is the initial question raised, the question of whether a valid cause of action has been stated is necessarily subsumed in the certification question. (86 Ill. 2d 314, 318.) The *Schlessinger* court found it was appropriate for the trial court to have decided the defendant's motion to dismiss because it would be expensive and wasteful of time and effort to permit discovery to proceed on the certification issue if the trial judge was of the opinion that no valid cause of action had been stated. Accordingly, *Schlessinger* held that where a motion to dismiss is made by a defendant, thereby placing in issue the sufficiency of a complaint, a trial

court need not delay deciding the motion until the certification question has been resolved. See also *Wheatley v. Board of Education* (1984), 99 Ill. 2d 481.

Plaintiffs assert that the *Landesman* decision is not in point because the court has already determined that the complaint states a valid cause of action, and cites *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51. We find nothing in that case, however, which supports plaintiffs' assertion. That case involved years 1967-1971, not tax year 1977 and subsequent years as involved in the case at bar.

The general rule is that on remand, the circuit court can take only such action which conforms with the judgment of the court of review (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291), and the lower court has no power except to do that which it is directed. (*People ex rel. Campo v. Matchett* (1946), 394 Ill. 464; see also *People ex rel. Daley v. Schreier* (1982), 92 Ill. 2d 271, 276-77.) However, the question of the sufficiency of the cause of action is necessarily subsumed in the question of whether a class may be certified, and where an individual's cause of action fails, any attempted class action must fail also. Accordingly, the trial court acted properly in deciding the defendants' motion to dismiss.

The facts shown by the record provide support for a finding that the trial court committed no error in that it was the plaintiffs' burden, not the court's, to propose the subclasses to be certified (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 17-18, *appeal dismissed* (1982), 459 U.S. 86, 74 L. Ed. 2d 249, 103 S. Ct. 484; *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 463-64; see also *United States Parole Com. v. Geraghty* (1980), 445 U.S. 388, 408, 63 L. Ed. 2d 479, 498, 100 S. Ct. 1202, 1214-15), yet, plaintiffs took no action until ordered to do so nine months after the supreme court's mandate was filed in the circuit court. Further, it was plaintiffs who filed the motion for substitution of plaintiffs and class representatives, and plaintiffs never asked for a ruling on their motion to certify subclasses. It is axiomatic that the failure of a court to rule is not the same as a denial of a motion, and that the appellant may not complain of an invited error or one in which he acquiesced.

Accordingly, we conclude the trial court may not be charged with any error for the absence of a determination of whether a subclass exists.

(2) DISMISSAL OF THE SCHLENZES AND JOHNSON AS INDIVIDUAL PLAINTIFFS.

■ Preliminarily, we note the defendants' "hybrid" motion to dis-

miss brought pursuant to both sections 2—615 and 2—619 is one which has been specifically disapproved and has been labeled the antithesis of "meticulous practice." (See, *e.g., Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 66; *Galayda v. Penman* (1980), 80 Ill. App. 3d 423.) Although such pleading practice has been described as error, it has not been held *per se* reversible error, although reversal will be required if prejudice results to the nonmovant. *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 642.

From the record presented here, which contains no reports of proceedings, it does not appear the plaintiffs objected to the form of the defendants' motion seeking the dismissal of the Schlenzes as individuals. It is unknown whether a formal motion of any kind was addressed to the dismissal of Johnson, since the trial court's order merely recites it was upon plaintiffs' counsel's stipulation that Johnson had not exhausted his administrative remedies. Plaintiffs did object to the defendants' oral motion to dismiss Rice and Rudisill on December 22, 1983, since their petition to rehear included that ground, and their memorandum of law included an attempt to provide supporting documentation to establish that Rice and Rudisill had exhausted their administrative remedies. In this regard, at least, plaintiffs may have been prejudiced not only by the failure to specify under which section of the Civil Practice Law the defendants' motion to dismiss was being made, but also because the defendants made the motion orally, thereby depriving the plaintiffs of a seasonable opportunity to file counteraffidavits to the dismissal motion, if possible.

However, we believe the fact the court allowed a continuance of the plaintiffs' motion to rehear in order to permit them to produce additional materials in support of the motion mitigated any prejudice caused the plaintiffs by the defendants' improper pleadings, and we do not find it caused reversible error. Accordingly, we proceed to review the issue raised here in light of the pleadings and documents filed in the record. Although section 2—619 calls for presentation of the grounds for the motion by affidavits when the defect does not appear on the face of the pleading being attacked, discovery depositions, *inter alia*, have also been determined to be proper means by which to bring forth pertinent facts. *Sierens v. Clausen* (1975), 60 Ill. 2d 585; 87 Ill. 2d R. 212(a)(4).

■ Turning to the merits of this issue, plaintiffs assert it was not necessary to exhaust their administrative remedies under the facts of this case and, therefore, their dismissals as individual plaintiffs were improper.

Plaintiffs' argument on this point is that there are exceptions to the exhaustion doctrine which are applicable here, citing *Miller v. Department of Public Aid* (1979), 69 Ill. App. 3d 477.

In *Miller*, the court noted that in some cases the reasons justifying the exhaustion doctrine are not present, and an exception is made.

> "Thus, the exhaustion of administrative remedies has not been required where (1) an ordinance, statute, or regulation is attacked on its terms as unconstitutional [citations]; (2) where seeking administrative review would be futile [citations]; (3) where irreparable harm will result from the delay incident to further pursuit of administrative remedies [citation]; or (4) where an administrative agency has no power to proceed because it lacks jurisdiction [citations]." 69 Ill. App. 3d 477, 480.

Plaintiffs note that the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) is applicable only where it is expressly adopted by the act creating or conferring power on the agency involved. *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529.

Plaintiffs further note that two other exceptions to the exhaustion doctrine were recognized in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, *i.e.*, where the tax is unauthorized by law, or where the tax is levied upon property which is exempt from taxation.

The defendants construe the plaintiffs' claim as a complaint about the assessment of their own property, and conclude that in such cases the court is precluded from considering the individual claims of named plaintiffs in a judicial proceeding, and that an adequate remedy at law is provided by way of paying taxes under protest and filing objections to the collector's application for judgment. (*People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477; *People ex rel. County Collector v. Bostwick* (1965), 33 Ill. 2d 74; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101.) The court in *Clarendon* expressed its view that, although it had been held in the past that the collection of taxes could be enjoined where there was an allegation of a fraudulent assessment of property, the remedy provided at law for paying taxes under protest served to obviate the need for equity to intervene. 56 Ill. 2d 101, 105-07.

Defendants point out that alleged irregularities and violations of a party's constitutional rights may also be litigated and relief granted in tax objection proceedings where warranted. *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318.

The defendant Director of the Department of Revenue, John Cas-

tle, counters plaintiffs' claim that this cause falls within one of the recognized exceptions to the exhaustion doctrine. He cites *In re Application of Korzen* (1974), 20 Ill. App. 3d 531, for the proposition that a taxpayer must pursue his administrative remedies before he may resort to the courts. He asserts none of the plaintiffs paid the taxes under protest. Rice evidently has pending before this court an appeal from a decision of the property tax appeal board concerning the 1977 assessments, Rudisill made some sort of nonspecific appearance before the Lake County board of review, and it was stipulated below that Johnson had not exhausted his administrative remedies.

As to whether this cause falls within one of the exceptions to the exhaustion doctrine, the Director asserts the plaintiffs have not argued in what way their complaint amounts to a challenge to the constitutionality of a statute. The Director correctly points out such challenges must amount to an allegation that the statute is unconstitutional on its face, and not just that it is being applied in a discriminatory or arbitrary manner. *Phillips v. Graham* (1981), 86 Ill. 2d 274.

We agree that plaintiffs have not argued in what respect their complaint alleges the unconstitutionality of a statute on its face, and such a characterization of the complaint is not evident either on the face of the amended and supplemented complaint itself, or as the gist of the complaint was described in the supreme court's summation of it in *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 200-01.

Plaintiffs' first amended complaint, the amendments and supplement thereto and their exhibits, comprise 128 pages of common law record. In their reply brief, plaintiffs assert they are not complaining about the assessment of their property but, rather, are complaining about other property "which is either under-assessed or is tax exempt." Clearly, such complaints do not amount to an allegation that a statute is unconstitutional on its face; rather, it implies that the agency is somehow not complying with the statute in assessing property, thus causing underassessment.

In *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 324, the court noted that if the allegations of the complaint are to be construed as being within the ambit of the "tax unauthorized by law" exception, it must appear that plaintiff's complaint is not that the assessment was too high (or too low, as here) but that it was assessed at all. Also, as stated in *Strahan v. MacDonald* (1976), 37 Ill. App. 3d 840, 842:

> "[P]laintiffs only contest the excess amount [of the tax] and do not claim that the entire tax was unauthorized. A contest to a

portion of a tax has uniformly been held not to satisfy this exception. [Citations.]"

The second recognized exception to the exhaustion doctrine relates to those instances where a tax has been imposed on property which is exempt, and not to instances in which it is alleged that property has been improperly exempted from taxation. (*Cf. McKenzie v. Johnson* (1983), 98 Ill. 2d 87 (where the supreme court found a taxpayer had standing to challenge as unconstitutional on their face statutory property tax exemptions for parsonages and school-owned fraternity and sorority houses, where he also alleged that the granting of the exemption operates generally to raise the amount of real property tax which he must pay).) Notably, the *McKenzie* court reserved the question whether a taxpayer may bring an injunction action against public officials where the taxpayer alleges that the grant of an exemption for a *specific* parcel of property violates article IX, section 6, the provision which limits the power of the General Assembly to exempt property from taxation. Ill. Const. 1970, art. IX, sec. 6.

By its allegations, plaintiffs' complaint concerning the exemption from taxation of property of veterans' organizations (Ill. Rev. Stat. 1983, ch. 120, par. 501.18(b)) presents no conflict with article IX, section 6, since that section specifically limits such exemptions to facilities used exclusively for charitable, patriotic and civic purposes. Plaintiffs' complaint alleges the conclusion that those properties are not used exclusively for charitable purposes. Plaintiffs' complaint similarly alleges the conclusion that section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 500.7) (which deals with charitable institutions, health maintenance organizations and hospitals) "contravenes the Illinois Constitution as those properties are not used exclusively for charitable purposes." As indicated in the supreme court's opinion in *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 100, 102, whether a particular piece of property qualifies for tax exemption depends on questions of fact. Accordingly, it is apparent that plaintiffs' complaint is addressed to the tax exemptions granted to particular pieces of property, and does not challenge their exemption as being unconstitutional *per se.*

*In re Application of Clark* (1980), 80 Ill. App. 3d 1010, cited by the plaintiffs for the proposition that it is within the power of the courts to determine whether or not a particular piece of property is entitled to be tax exempt, involved an objection to a judgment obtained on application of the county collector for delinquent real estate taxes, and is not apposite to the case at bar.

With regard to the "futility" exception noted in *Fiore v. City*

*of Highland Park* (1966), 76 Ill. App. 2d 62, cited by plaintiffs, the record is clear that the Schlenzes never filed a tax objection, or appeared before the Lake County board of review, and plaintiffs' counsel stipulated that Johnson had failed to exhaust his administrative remedies. No facts are alleged or appear in the record from which it could be concluded that plaintiffs should be excepted from the exhaustion doctrine on the basis of the futility of pursuing their administrative remedies.

Plaintiffs attempt to establish the applicability of the futility exception to their proposed substitute plaintiffs Rice and Rudisill by reference to two documents appearing in the record in support of their motion to rehear is without merit. The purported record of Rice's appearance before the property tax appeal board is barely legible, the reverse side of the report of the hearing was not provided in the record, the extent of the issues and questions presented for the board's consideration is unable to be determined from the document, save for an indication that the appellants (Rice *et al.*) attempted to demonstrate using photographic exhibits that different assessment practices were used on different types of properties, and the finding of the board that "none of these [exhibits] conclusively showed a reduction" is warranted. Further, and apparently notwithstanding plaintiffs' claim that it would be "futile" to pursue administrative remedies, plaintiffs indicate that Rice's appeal from the decision of the property tax appeal board is now pending before this court in appeal No. 83—856.

The document included in the record concerning Rudisill's appearance before the board of review is dated only several months before the court below entered judgment in this cause, and it does not give any indication whatsoever of what the "legal problem" was which the board felt it could not address. Clearly, also, the document indicates in a footnote the procedure to be followed for appeal of the board's decision to the property tax appeal board. Accordingly, we conclude the futility exception is not applicable to this case, and plaintiffs would not be relieved of their duty to pursue administrative remedies on that basis.

■ The record here shows no danger of the type of "irreparable harm" which was found in the *Slattery* case to warrant that an exception be made to the exhaustion doctrine. (*Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31.) *Slattery* involved the denial of a temporary rate schedule, without which temporary rates the company would have to operate for many months without an adequate return and with no possibility of getting any compensation if the company were eventually successful. Accordingly, equity jurisdiction was

determined to be the only means of avoiding the harm. The irreparable harm suggested by plaintiffs here is that pursuit of their administrative remedies before the board could delay the issuance of tax bills, thereby causing late receipt of tax revenues by the taxing bodies, and depriving cash basis taxpayers of the opportunity to receive Federal income tax credit for their real estate tax payments. These potential hazards, however, are obviated upon recourse to the statutory remedy at law of paying the taxes due under protest, filing an objection thereto, and applying for a refund if the protest is successful. Ill. Rev. Stat. 1983, ch. 120, par. 675.

In *People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, it was held that an action for declaratory judgment can be maintained in revenue cases where the procedure for assessing and collecting taxes is specifically provided by statute only in situations where the party bringing the action does not have an adequate remedy at law. In cases in which the statute does provide an adequate remedy at law, an action in such a case is not one cognizable in the first instance in the courts, but is a matter properly maintained in the first instance by an administrative agency alone. 86 Ill. 2d 479, 486.

■ Finally, plaintiffs' assertion that the board and the property tax appeal board have no power to proceed on the issues raised and, therefore, plaintiffs should not be required to pursue those remedies, is without merit, and is unsupported by any authority. Here plaintiffs once again refer to the documents appended to their motion for rehearing. It is clear, however, that the board has substantively the same powers as the Cook County Board of Appeals, and that board has authority to consider not only whether assessed valuation exceeds the fair cash value, but also whether the real estate was correctly classified and whether the assessment was at the same percentage of fair cash value as was applied to other property within the appropriate classification. (*Stephens v. Property Tax Appeal Board* (1976), 42 Ill. App. 3d 550.) In *People ex rel. Korzen v. Fulton Market Cold Storage Co.* (1976), 62 Ill. 2d 443, 446-48, *cert. denied* (1976), 429 U.S. 833, 50 L. Ed. 2d 98, 97 S. Ct. 97, the court similarly unequivocally rejected the taxpayer's argument that the board of appeals was not empowered to correct a fraudulent disparity in assessment which resulted from the improper underassessment of other property in Cook County.

In sum, we conclude none of the exceptions to the exhaustion doctrine were applicable to this case, and the trial court did not err in dismissing the taxpayers for failure to exhaust their administrative remedies.

(3) INADEQUACY OF RICE AND RUDISILL AS CLASS REPRESENTATIVES.

■ Plaintiffs contend the trial court's judgment in this regard was premature, because until the determination was made as to whether there was a subclass to certify, no decision could be made as to whether Rice and Rudisill were adequate class representatives. Plaintiffs note there are no statutory requirements as such as to who may act as a class representative; nevertheless, they assert that the record shows Rice and Rudisill possessed the necessary qualifications established by the *Steinberg, Schlenz* and *Barliant* cases.

In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, the court in discussing the third prerequisite of a class action—that the "representative parties will fairly and adequately protect the interest of the class" (Ill. Rev. Stat. 1983, ch. 110, par. 2—801(3))—stated:

> "Absentee class members must be so represented that their rights will receive adequate protection. Here plaintiffs' interests are not antithetical to those of other members of the class, but are the same. This certainly does not appear to be a collusive or friendly action. As far as we can determine, representation by the plaintiff will afford protection to other members of the class who must be afforded due process. [Citations.] Due process includes the requisite that the representative parties' 'attorney must be qualified, experienced and generally able to conduct the proposed litigation.' [Citation.] These, of course, are matters which the circuit court can determine on a preliminary hearing." 69 Ill. 2d 320, 338-39.

In *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, the supreme court determined that a representative plaintiff in a class action should be disqualified from serving as counsel for the class to avoid the inherent *per se* conflict of interest which would result from the fact that the class attorney is a financial beneficiary of the action. In applying the rule to the case before it, the *Barliant* court concluded:

> "[W]e do not believe it is sufficient to replace the named representative plaintiff with another class member, while retaining the same counsel, because this would permit an attorney to bring a suit to benefit his or her firm and later replace the representative party while protecting the firm's financial interest." 74 Ill. 2d 226, 238.

In *Schlenz*, of course, this court found that the Schlenzes knew virtually nothing about the suit and simply told their attorney to do "whatever he thought necessary." (*Schlenz v. Castle* (1980), 80 Ill. App. 3d 1131, 1133.) It was concluded that under those circumstances, the attorney was the *de facto* representative of the class.

This court further determined that on remand, if a subclass was found, that there should either be a substitution of attorneys or of class representatives. (80 Ill. App. 3d 1131, 1134.) Notwithstanding plaintiffs' assertion that substitution of class representatives would be premature without certification of a subclass, plaintiffs nevertheless initiated such substitution of "plaintiffs and class representatives" with "the Lake County Taxpayers Association, Frank Rice, Stephen Rudisill and Donald C. Johnson." It appears the Lake County Taxpayers Association has not been dismissed from the suit and remains the named plaintiff. Plaintiffs' motion for substitution of parties stated it was brought pursuant to section 2—407 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—407). It has been held that:

> " 'The purpose of this statute is to cure the defect of misjoinder or of non-joinder of proper parties without turning the case out of court, and not to substitute new parties for all of the plaintiffs or for all of the defendants.' " *Thompson v. Otis* (1936), 285 Ill. App. 523, 533, quoting *Zukowski v. Armour* (1903), 107 Ill. App. 663.

With the court's dismissal of the Schlenzes, who were the named plaintiffs, it appears that the granting of the motion to substitute effectively did substitute "new parties for all the plaintiffs." Cf. *Spring Mill Townhomes Association v. OSLA Financial Services, Inc.* (1983), 124 Ill. App. 3d 774 (where no class had been certified, the court found no remand for appointment of a new class representative was necessary because the deficiency in the status of the named plaintiffs was substantive; *i.e.*, plaintiffs either lacked standing, signed releases, or had been stricken from the complaint).

That aside, plaintiffs cite no authority for the proposition that the class representatives could not be determined prior to certification of a subclass, although such a sequence seems logical. In fact, the several aspects of class actions, such as adequacy of representation of the class by the named parties and their counsel, the necessity of notice to members of the class, and a determination of classes or subclasses, cannot be neatly compartmentalized and independently resolved, since they all overlap to varying degrees. (*Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 592.) Despite the obvious desirability of identifying the subclass before determining whether the named representative is adequate, we note that in one instance parties were permitted to represent subclasses of which they were not members, when the subclass fell within the ambit of the larger class to which they did belong. (*Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 44-45.) Therefore, assuming that the

subclasses, if any, which might later be certified would be drawn from the larger class of single-family residential property owners, the court could presently determine the proposed representatives' adequacy as to the larger class and, if necessary, reconsider that determination when, and if, a subclass or subclasses are certified. (See *Frank v. Teachers Insurance & Annuity Association of America* (1978), 71 Ill. 2d 583, 590.) Additionally, section 2—802(a) of the Civil Practice Law specifically provides that the court's order determining whether the action may be maintained as a class action and describing the class is a conditional one which may be amended before a decision is made on the merits. Ill. Rev. Stat. 1983, ch. 110, par. 2—802(a).

Viewing the adequacy of Rice and Rudisill as proposed representatives of the larger class and, in light of the available case precedent, we find no error in the court's judgment they were inadequate class representatives. As revealed by their depositions, which were included in the record, they suffer from the same infirmities the Schlenzes did. Rice and Rudisill knew barely more about the suit than Mrs. Schlenz, as evidenced by excerpts of her deposition, also included in the record. Further, the apparent degree of control of the case which they had vested in their attorney—the selfsame one who represented the Schlenzes, Paul Hamer—causes us to conclude the attorney would still have been the *de facto* representative of the class, and the *per se* conflict of interest discussed in *Barliant* would still exist.

We conclude the court did not abuse its discretion in denying Rice and Rudisill class representative status. Plaintiffs present no argument as to Donald Johnson in connection with this issue; therefore, no consideration is required or given. 87 Ill. 2d R. 341(e)(7).

(4) DISMISSAL OF RICE, RUDISILL AND JOHNSON AS INDIVIDUAL PLAINTIFFS.

■ Plaintiffs argue here that Rice, Rudisill and Johnson were improperly dismissed as individuals, since they have standing to proceed with a challenge to the assessment and equalization procedure (*Hamer v. Kirk* (1976), 65 Ill. 2d 211) and, by claiming their tax liability is affected by the exemptions granted to the veterans organizations' properties, etc., they also have standing to sue on the basis of the allegations in the amendment to the first amended complaint. *McKenzie v. Johnson* (1983), 98 Ill. 2d 87.

In each of those cases, however, the taxpayers were found to have standing because they were challenging the constitutionality of certain revenue statutes on their face. Further, although plaintiffs assert the question of the standing of a taxpayer to challenge the exemption

of a specific piece of property was not before the court, the *McKenzie* court expressly reserved that question, and plaintiffs have cited no other authority in support of their argument that they had standing as to these tax exempt properties. Further, an individual taxpayer has no right to bring a suit to collect taxes (*People ex rel. Morse v. Chambliss* (1948), 399 Ill. 151), and a challenge to the tax exempt status of property is an attempt to collect taxes. *Hoffman v. Northwestern University* (1976), 40 Ill. App. 3d 1012.

Plaintiffs rely on *People ex rel. Haas v. Ackermann* (1982), 110 Ill. App. 3d 789, for the proposition that taxpayers are not required to appear before the board of review where the application of the equalization factor is being challenged. That case was an appeal of consolidated tax objections filed by various taxpayers in which the objectors challenged their 1979 real estate tax assessments. They alleged that the application of the equalization rate, or "multiplier," resulted in a fraudulent and excessive assessment of their property. Notably, however, the court considered that the objectors had not had the opportunity to have a hearing before the board concerning the multiplier because the board adjourned before the multiplier was established. Accordingly, the court found the taxpayers' tax objection suit in the circuit court was not barred by their failure to have had a hearing before the board of review. Plaintiffs here have neither alleged nor argued that they had no opportunity to have a hearing before the board of review so as to excuse that preliminary step as was done in *Haas*. Thus, *Haas* is distinguished on its facts. Further, none of the parties here actually filed a tax objection in the circuit court after having paid their taxes under protest as provided in section 194(a) of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 675). Proposed substitute plaintiff Rice did pursue his administrative remedies from the board of review to the property tax appeal board, and thence on administrative review to the circuit court and finally on appeal to this court. Appeal No. 83—856, Frank S. Rice *et al*. v. The Property Tax Appeal Board, shows the plaintiffs there were seeking relief from the assessment of their real estate for the 1978 tax year. The complaint at bar, however, challenges at the outset the assessment and equalization procedures for the 1977 tax year and subsequent years. The record in the appeal at bar does not indicate any of the proposed plaintiffs exhausted their administrative remedies in connection with the 1977 tax year.

As previously noted, counsel stipulated Donald C. Johnson had failed to exhaust his administrative remedies and, thus, would have no standing to challenge the assessment and equalization procedures.

As plaintiffs note, the Lake County Taxpayers Association has not been dismissed from the case, and the record does not indicate a stay of proceedings pending appeal was either requested or granted. Since the taxpayers association apparently still remains a viable plaintiff, no further discussion of its standing is warranted at this point.

With regard to the plaintiffs' standing to challenge the constitutionality of grants-in-aid, defendants assert plaintiffs have abandoned any arguments concerning them, because the supplemental complaint is not part of the record and plaintiffs have not presented any argument in relation thereto.

■■■ The record here ultimately was allowed to be supplemented with the plaintiffs' supplemental complaint regarding grants-in-aid, and the defendants' first argument therefore is moot. It is correct, however, that plaintiffs did not present any argument on this point in their brief and, therefore, have waived consideration thereof. (87 Ill. 2d R. 341(e)(7).) Further, plaintiffs do not attempt to distinguish the circumstances of this cause from those found by this court in *Hamer v. Dixon* (1978), 61 Ill. App. 3d 30, to have constituted an impermissible collateral attack on a previous decision of the supreme court in *Hamer v. Kirk* (1976), 65 Ill. 2d 211.

(5) NOTICE TO THE CLASS.

■■■ Plaintiffs argue that *Barliant, Petruchius v. Don Roth Restaurants, Inc.* (1979), 79 Ill. App. 3d 1071, and the provisions of section 2—806 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—806) require that a class action may not be dismissed without court approval, and notice must be given to the class of dismissal, unless excused for good cause shown.

Plaintiffs' argument on this issue is without merit. *Barliant* does not speak to the necessity of notice under the conditions described by section 2—806, nor, in fact, does *Petruchius* do more than note the existence of the provision. Further, there was no order amounting to a dismissal in *Petruchius*, since the trial court's order denying class certification is not a final one. Ill. Rev. Stat. 1983, ch. 110, par. 2—802(a).

Plaintiffs' position below that notice of dismissal must be sent to the subclasses "so that they might name a new class representative" was prefaced by the condition, however, "should the court find that the action may proceed as a class action ***." No such finding has yet been made in this cause, and no class or subclass has been certified. To quote defendants: "Who would be notified?" and, we must add, "Of what?" since the entire cause has not been dismissed nor, in

fact, were proceedings stayed pending this appeal.

### (6) REMEDY TO BE SUPPLIED WHEN NONE EXISTS

■■■ Plaintiffs argue the constitution provides that every person shall find a certain remedy in the laws for all injuries and wrongs which he receives (Ill. Const. 1970, art. I, sec. 12), and that the court in *Skelly Oil Co. v. Universal Oil Products Co.* (1949), 338 Ill. App. 79, held that where there was no statutory remedy available, the courts must supply one.

Because the plaintiffs' action has not yet been dismissed in its entirety, we find their argument about the lack of a remedy is premature. It has been stated that it is the duty of this court to decide actual controversies which can be carried into effect, and not to give opinions upon abstract propositions or to declare principles of law which do not affect the matter in question. (*Handley v. Unarco Industries, Inc.* (1984), 124 Ill. App. 3d 56, 69.) Further, as pointed out by the defendants, article I, section 12 of the constitution has been construed to be a statement of philosophy and was not meant to have a substantive effect on Illinois law. *Favata v. Rosenberg* (1982), 106 Ill. App. 3d 572; *Koskela v. Martin* (1980), 91 Ill. App. 3d 568, 572.

### (7) COURT'S JURISDICTION AT HEARING.

■■■ Plaintiffs complain the notice they received of defendants' intent to request at the December 22 hearing a ruling on their previously filed motion to dismiss the Schlenzes was served less than 17 hours prior to the hearing. This, they contend, was in violation of a local Lake County circuit court rule, Rule 2.1(d), and, further, that no written motion to dismiss proposed substitute plaintiffs Rice and Rudisill was filed in contravention of Supreme Court Rules 104(b) and 131 (87 Ill. 2d Rules 104(b), 131) and section 2—620 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—620).

We find no merit to plaintiffs' argument on this issue. Supreme Court Rule 104(d) explicitly provides that the failure to deliver or serve copies as required by that rule does not in any way impair the jurisdiction of the court over the person of any party. (87 Ill. 2d R. 104(d).) Plaintiffs allege no actual prejudice to them as a result of the untimely notice, and none is evident, particularly in view of the fact the motion on which the ruling was to be requested was filed almost eight months earlier on April 5, 1983. Plaintiffs appeared and argued the merits of the motion, thus waiving any defect in the notice. *People ex rel. Akin v. Jones* (1928), 333 Ill. 382; see also *Hargrove v. Gerill Corp.* (1984), 124 Ill. App. 3d 924, 929.

## (8) Venue.

■■■ Plaintiffs' motion for change of venue was made after remand of the cause from the supreme court following their interlocutory appeal under Supreme Court Rule 308 of the trial court's finding that the cause could not proceed as a class action. Section 2—1001 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001) provides that a petition for a change of venue is to be made before trial or hearing, or before the judge has ruled on any substantial issue in the case. Petitions for change of venue after that time may be presented "if any ground for such change of venue occurs thereafter ***." Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(c).

> "The rationale for providing a mandatory right of removal before there has been a ruling on a substantial issue is that a party should not be compelled to present his case 'before a judge who is prejudiced, whether actually or only by suspicion'; the correlative principle for requiring actual allegations of prejudice after a ruling on a substantial issue is that a party 'may not "judge shop" until he finds one in total sympathy to his cause' *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 128." *In re Marriage of Zannis* (1983), 114 Ill. App. 3d 1034, 1038.

Defendants correctly distinguish the case cited by plaintiffs, *Wheaton National Bank v. Aarvold* (1973), 16 Ill. App. 3d 193, on the basis the motion for change of venue there was in proper form and was timely filed; that is, before any rulings were made on substantial issues. The same cannot be said of the motion in the case at bar. The cause here was not a "new" proceeding, but a continuation of the proceeding. See *In re Dependency of Bartha* (1969), 107 Ill. App. 2d 214; *cf. Millburn Mutual Insurance Co. v. Glaze* (1980), 86 Ill. App. 3d 1055 (where the court found that although the force and effect of a court's prior rulings are vitiated by an order granting a mistrial, the rulings are not ignored in applying the provisions of the venue statute where they are "substantial rulings").

Plaintiffs' allegation that all of the judges of Lake County "may be members of one of the various subclasses of taxpayers involved in the instant cause" was speculative, since no subclasses were "involved in the instant cause" or had even been proposed at the time plaintiffs' petition for change of venue was filed. As noted by defendants, when plaintiffs' complaint was originally filed, all judges in the State, not just Lake County, were potentially class members. Further, it would appear any interest the judges might have in this suit would have been sympathetic to those of the class or subclass of which the

judges purportedly would be members, and thus, no cause for complaint of prejudice against the plaintiffs.

Plaintiffs' specific allegation that Judge Hartel would be prejudiced against their attorney because they were opponents in a bitterly contested case was sufficient to require removal of the cause from that judge and, in fact, that judge transferred the cause to the chief judge for reassignment.

Plaintiffs' further allegation that all the judges in Lake County are prejudiced against their attorney "because this litigation has been going on for over twenty-two years and the majority of the judges have either been assigned to the case or excused themselves or discussed the case with other judges" is inadequate to support the allegation they would be prejudiced against him. (*Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247.) The allegation itself inherently suggests there must be a minority of Lake County judges left who have not been assigned to the case, and who would not be prejudiced against plaintiffs' counsel.

We conclude the court did not abuse its discretion in denying the plaintiffs' motion for change of venue.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE UNVERZAGT delivered the opinion of the court:

In their petition for rehearing and application for certificate of importance, the plaintiffs assert the issue before this court was not whether the pleadings stated a cause of action, but whether the cause of action was barred because some of the parties did not appear before the board of review. The issue raised by the parties and addressed by this court, however, was whether it was proper for the court to decide the defendant's motion to dismiss the cause before the subclass was certified. We made clear in our opinion that a motion to dismiss may be decided prior to determination of the subclass, since the question of class certification necessarily subsumed the question whether a valid cause of action had been stated. In *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, it was held that where the plaintiff has no individual cause of action (for example, where plaintiff has not exhausted administrative remedies), any attempted class action also must

fail.

Plaintiffs next assert the complaint and supplemental complaint "are identical to those ruled upon in the prior *Hamer* decisions [*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360; *Hamer v. Mahin* (1970), 47 Ill. 2d 252, and *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51]." The assertion refers to matters which are *dehors* the record and—except for the reference to *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51, which was included in the plaintiffs' original reply brief and which was addressed in this court's opinion—it amounts to an improper attempt to present a new argument in a petition for rehearing and application for certificate of importance.

Plaintiffs next claim they should not be "penalized" for the failure of the trial court to rule on the matter of the subclasses since there is "no supreme court rule which authorizes a party to request a ruling on a matter which the court has taken under advisement." Nevertheless, it is well established that when the court reserves a ruling, the movant must seek a decision or ruling in order to preserve the motion for review. *Village of Maywood v. Health, Inc.* (1982), 104 Ill. App. 3d 948.

Plaintiffs next posit that the Schlenzes and Johnson should not have been dismissed for failure to exhaust their administrative remedies. Plaintiffs argue that because constitutional issues were raised which neither the PTAB (property tax appeal board) nor the board of review could pass on, it was not necessary to appear before the board of review. Plaintiffs' claim regarding the power of the PTAB and board of review appears to be based on their reading of a Rule 23 order entered in *Rice v. PTAB* (1984), 126 Ill. App. 3d 1158 (Rule 23 order). Neither the Schlenzes nor Johnson were plaintiffs below in that case. Since such an order is not precedential, we may not consider it. (87 Ill. 2d R. 23.) We, therefore, reject this argument.

As we noted in our opinion in this cause, plaintiffs did not argue, nor was it apparent, that their first amended complaint alleged the unconstitutionality of a statute on its face so as to fall within one of the exceptions to the exhaustion doctrine. The Illinois Supreme Court in *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, recognized the general rule that there is no right in an individual taxpayer to bring a suit for the collection of taxes. A challenge to the tax-exempt status of property is an attempt to collect taxes. (*Hoffman v. Northwestern University* (1976), 40 Ill. App. 3d 1012.) Such suits must be brought by the person or agency designated by statute for that purpose, and it has been held that only taxing bodies have standing to challenge the exempt status of a particular piece of property. (*People ex rel. Morse v. Chambliss* (1948), 399 Ill. 151.) The exception to that rule is when a plaintiff seeks

to enjoin the enforcement of a tax exemption statute which is allegedly unconstitutional on its face. Plaintiffs did not make that allegation, however, nor did they present argument or authority to refute the appellees' contentions that they had no standing to challenge the tax exempt status of specific property. Accordingly, there is no basis for plaintiffs' claim that this court "overlooked" the fact they had standing on the same ground as the plaintiff in *McKenzie v. Johnson*. Parties cannot for the first time on petition for rehearing raise questions which were not urged or argued on appeal. *Sobina v. Busby* (1965), 62 Ill. App. 2d 1.

Plaintiffs claim that this court "overlooked" the fact they argued that they had no opportunity to challenge the township equalization factor before the board of review, thus they claim their case is on "all fours" with *People ex rel. Haas v. Ackermann* (1982), 110 Ill. App. 3d 789, discussed in this court's opinion.

As we noted, no argument was made below which would have brought the instant case within the reasoning expressed in *Haas*, nor do plaintiffs point to any support in the record for their assertion here.

Plaintiffs' assertions concerning our disposition of the grants-in-aid issue are without merit. Plaintiffs simply failed to argue the issue in their brief on appeal, thus waiving the issue. Their effort to distinguish *Hamer v. Dixon* (1978), 61 Ill. App. 3d 30, is an attempt to present new argument in a petition for rehearing and is improper.

In sum, plaintiffs' petition for rehearing is addressed more to this court's treatment of the issues raised than to its ultimate decision on the merits of the appeal. It is axiomatic that it is the court's decision that is the subject of reconsideration on a petition for rehearing rather than the language or reasoning employed therein. (*Welton v. Hamilton* (1931), 344 Ill. 82.) Plaintiffs' petition fails to set forth any points or arguments allegedly overlooked by this court which would have affected our decision.

Accordingly, we deny the petition for rehearing.

In the alternative, the plaintiffs request a certificate of importance be issued by this court pursuant to Supreme Court Rule 316 (87 Ill. 2d R. 316). Plaintiffs state no grounds on which they rely in support of their application, however, and we therefore deny the request.

Petition for rehearing denied.

Petition for certificate of importance denied.

HOPF and REINHARD, JJ., concur.